**E-FILED**
Friday, 27 March, 2020  11:40:40 AM
Clerk, U.S. District Court, ILCD

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Central District of Illinois



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated With Facebook Accounts for<br>User IDs: 100034034704947 and<br>100041645890133, further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 20-MJ-7 𝘰55

FILED

MAR 2 7 2020

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information Associated With Facebook Accounts for User IDs: 100034034704947 and 100041645890133, more particularly described in Attachment A, that is stored at premises controlled by Facebook, Inc.

located in the _____Central_____ District of _____Illinois_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Sexual Exploitation of a Minor |
| 18 U.S.C. 2422(b) | Enticement of a Minor |
| 18 U.S.C. 2252 & 2252A | Trafficking Child Pornography |

The application is based on these facts:

See Affidavit of Homeland Security Investigations Task Force Officer Ronald A. Borowczyk

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Ronald Borowczyk

*Applicant's signature*

RONALD A. BOROWCZYK, HSI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____electronic mail and telephone_____ *(specify reliable electronic means)*.

s/Eric Long

Date: 03/27/2020

*Judge's signature*

City and state:  Monticello, IL

Eric I. Long, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>Information Associated With Facebook Accounts for User IDs: 100034034704947 and 100041645890133, more particularly described in Attachment A, that is stored at premises controlled by Facebook, Inc. | Misc. No.  20-MJ-7 *055* |

## AFFIDAVIT

I, Ronald A. Borowczyk, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Task Force Officer (TFO) with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Resident Agent in Charge (RAC) in Springfield, Illinois since 2004. As part of my duties as an HSI/ICE TFO, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252(a) and 2252A. I received training in the area of child pornography and child exploitation at the Federal Law Enforcement Training Center in Brunswick, Georgia, in 2006 (PCERT/ BCERT) and at DHS/HSI ICE Cyber Crime Headquarters in Fairfax, Virginia (ACERT). I have also completed OJJDP Training on conducting investigations into the exploitation of children, and child

pornography via the internet. I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in various forms of media to include print and digital forms of media. I am also a Detective with the Decatur, Illinois Police Department. I have been employed as a Police Officer since September of 1992. I have been assigned to the juvenile investigations division since 2000. Prior to that assignment, I was assigned to the Decatur Police Department's Street Crimes Investigations Unit. Prior to becoming a Police Officer, I earned the rank of sergeant in the Illinois Army National Guard, and in 1990 I was commissioned as a Second Lieutenant in the United States Army Reserve, receiving my honorable discharge from service in 1999. I earned my Bachelor of Science Degree from Southern Illinois University-Carbondale in 1991, majoring in Administration of Justice with a specialization in security management and secondary specialization in Army Military Science.

2. As a task force officer, I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, child exploitation and child pornography offenses enumerated in Title 18, United States Code, Sections 2251, 2252 and 2252A, et seq. As an HSI task force officer, I am authorized to execute warrants issued under the authority of the United States.

3. This affidavit is based upon information I have gained from my investigation, training, and experience.

4.      Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. I have set forth only the facts that I believe are necessary to establish probable cause that to believe that fruits, evidence and instrumentalities of the offenses listed below are located in the following place: attempted or actual violations of Title 18, United States Code, Sections 2251(sexual exploitation of a minor), Title 18, United States Code, Sections 2252 and 2252A (trafficking child pornography), and Section 2422(b) (enticement of a minor) are present at the subject premises known as Facebook, Inc., 1601 S. California Avenue, Palo Alto, CA 94304, specifically:

Information and content, as described in Attachment A, associated with the following Facebook accounts:

| Screen Name | Facebook User ID | Profile URL |
|---|---|---|
| Cory.banks.1481 | 100034034704947 | http://www.facebook.com/cory.banks.1481 |
| Ashley-Smith | 100041645890133 | http://www.facebook.com/people/Ashley-Smith/100041645890133 |

3

## RELEVANT STATUTORY OFFENSES

5.      This investigation concerns alleged violations of:

a.      **Child Pornography Trafficking** (Title 18, United States Code, Section 2252):  This investigation concerns alleged violations of Title 18, United States Code, Section 2252, which generally prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.  It is also a crime to attempt to commit this offense.

b.      **Child Pornography Trafficking** (Title 18, United States Code, Section 2252A):  This investigation also concerns alleged violations of Title 18, United States Code, Section 2252A, which generally prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in Title 18, United States Code, Section 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.  It is also a crime to attempt to commit this offense.

## DEFINITION OF TERMS

6.      The following terms have the indicated meaning in this affidavit:

a.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* Title 18, United States Code, Section 1030(e)(1). "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers,

4

video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

b.    "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

c.    "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

d.    The term "email" (electronic mail) is defined as the text messages sent from one person to another via a computer, which may include images.  Email can also be sent automatically to a large number of addresses via a mailing list.

e.    The term "Internet" is defined as the worldwide network of computers, a noncommercial, self-governing network devoted mostly to communication and research with roughly 500 million users worldwide.  The Internet is not an online service and has no real central hub.  It is a collection of tens of thousands of computer networks, online services, and single user components.  In order to access the Internet, an individual computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider ("ISP"), which operates a host computer with direct access to the Internet.

f.      The term "Internet Protocol Address" or "IP Address" is defined as a unique number assigned to every computer directly connected to the Internet (for example 173.18.96.176).   Each computer connected to the Internet is assigned a unique IP address while it is connected.   The IP address for a user may be relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP address is only assigned for the duration of that on-line session.

g.      The term "ISP" (Internet Service Provider), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.   ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.   Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.   This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

i.      The term "web site" consists of text pages of information and associated graphic images.   The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from the web servers to various web clients via Hyper-Text Transport Protocol.

j.      "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

k.      "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

l.      "Cloud" or "Cloud storage," as used herein, is a mechanism in which files can be saved to an off-site storage system maintained by a third-party – i.e., files are saved to a remote database instead of the (user's) computer's hard drive. The Internet provides the connection between the user's computer and the database for saving and retrieving the files.

m.      A provider of "Electronic Communication Service" ("ESP"), as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability

6

to send or receive wire or electronic communications.  For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services.  *See* S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

n.    "Remote Computing Service" ("RCS"), as defined in Title 18, United States Code, Section 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

o.    "Short Message Service" ("SMS"), as used herein, is a service used to send text messages to mobile phones.  SMS is also often referred to as texting, sending text messages, or text messaging.  The service allows for short text messages to be sent from one cell phone to another cell phone or from the Web to another cell phone.

p.    The term "minor" is defined at Title 18, United States Code, Section 2256(1) as any person under the age of eighteen years.

q.    The term "sexually explicit conduct" is defined at Title 18, United States Code, Section 2256(2)(A) as actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or anal-oral, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals or pubic area of any person.

## SERVICES PROVIDED BY FACEBOOK

7.    Based on my training and experience, I have learned the following about

Facebook's Services:

a.    Facebook owns and operates a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

b.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names,

websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

c.  Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

d.  Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

e.  Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

f.  Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well

as all photos and videos uploaded by any user that have that user tagged in them.

g.      Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

h.      If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

i.      Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

j.      Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

k.      Based on my training and experience, I know that Facebook Profile URLs can be converted to Facebook User IDs, which are numeric strings that Facebook uses to locate user accounts. A free website that performs such conversations and provides Facebook User IDs based on a given Facebook Profile URL is https://www.findmyfbid.com. Your affiant pulled up this website, entered the Facebook Profile URLs listed in Attachment A, and learned that the Facebook User IDs are the following Target Accounts:

| Screen Name | Facebook User ID | Profile URL | IP address |
|---|---|---|---|
| Cory.banks.1481 | 100034034704947 | http://www.facebook.com/cory.banks.1481 | 2600:17802:42e0:86b0:ec7d:bdbb:5855:132c |
| Ashley-Smith | 100041645890133 | https://www.facebook.com/people/Ashley-Smith/100041645890133 | 2600:1702:42e0:86b0:4d38:3372:2773:bfe7 |

## **INVESTIGATION OF TYLER D. JEFFREY**

8.      The National Center for Missing and Exploited Children (hereinafter referred to as "NCMEC") is a national clearinghouse that gathers information about missing and exploited children for law enforcement use. NCMEC forwards all information to law enforcement agencies for investigation and disposition pursuant to its Congressional mandate to operate as a clearinghouse. NCMEC operates the CyberTipline and the Child Victim Identification Program (CVIP) to provide assistance to law enforcement in its efforts to identify victims of child pornography and child sexual exploitation.  Based on this investigation, TYLER D. JEFFREY has received, stored and distributed contraband material, namely child pornography.

### **Cybertips**

9.      *Cyber-Tip 61080353* – On December 12, 2019, Facebook reported to NCMEC that an individual using the screen name "Ashley Smith," sent sexually explicit images involving apparent minors to an individual using the screen name "Cory Banks." On December 6, 2019, Cory Banks received from Ashley Smith the following items that were viewed by Facebook and submitted to the National Center for Missing and Exploited Children Cyber-Tip.

10.    The first was an image file with the following file name f1gow0uyc0g8gw8878485893_739654496519691_3411131814679412736_n.jpg.    This file depicts a nude white female child, between two and four years of age, sitting and holding an adult white male's penis in her right hand.

11.    The next file was also an image file that had the following filename 7457bjm3pecc00kc67273855_642229609595255_1452245927313014784_n.jpg is an image file that shows a nude white female child between five and eight years of age with the words "shit eater" printed in what appears to be black marker on her chest and her nipples are also circled with black marker as well. There is white colored liquid looking material in the child's mouth and also on her legs and vaginal area. The white liquid has the appearance of ejaculate material. The child is posed in crib.

12.    The following internet protocol addresses were captured by Facebook and reported to the National Center for Missing and Exploited Children with this Cyber-Tip. 2600:1702:42e0:86b0:4d38:3372:2773:bfe7, identified as being used by "ASHLEY SMITH." The Internet Service provider associated with this address was found to be AT&T U-Verse. The next address is 2600:1702:42e0:86b0;ec7d:bdbb:5855:132c, identified as being used by "CORY BANKS." The Internet Service provider associated with this address was also AT&T U-Verse.

13.    *Cyber-Tip 60945107* – Reported to the National Center for Missing and Exploited Children by Facebook on December 10, 2019, that a user identified as "ASHLEY SMITH" again sent "CORY BANKS" material that appeared to be child pornography.

11

Facebook reported that this occurred on December 6, 2019. Facebook reported that a total of three files again were sent and the file contents it showed that these are image files. The files had been viewed by Facebook when turned over to the National Center.

14.     The first image file for this Cyber-Tip was identified as follows: eb05pfnjfeo0gkko80390979_509424712990774_269969120101924864_n.jpg  and  is  an image file that shows a nude white female child between 12-14 years of age with legs spread and breasts exposed and posed in fashion where the minor's genitals are the focus of the image.

15.     The next image file in reference to this Cyber-Tip was identified as follows: 57gbpkaj4o4k448479531118_1055167681489144_6071330731282399232_n.jpg. This image file shows a white female child between three and five years of age wearing a short-sleeved tank style top with Sponge Bob Square pants on the chest. The child is wearing underwear that is pulled down exposing the vaginal are of the child. Standing in front of the child is an adult male who is exposing his erect penis. The adult male has his penis in the child's mouth.

16.     *Cyber-Tip 60768969*: On December 7, 2019, Facebook reported to NCMEC that a user identified as "ASHLEY SMITH" sent sexually explicit images to another Facebook user identified as "CORY BANKS." Facebook reported that this transaction had occurred on December 6, 2019.

17.     Facebook reported that the following file appeared to contain child pornography:  aeez1qbrte88s8c479774972_546897666153475_5929950994992463872_n.jpg. This image can be described as a white female child between four to six years of age

12

standing in front of an adult male, who is nude from the waist down. The child has her right hand on the male's erect penis and her left hand touching the male's testicles.

18.    Facebook reported the following file appearing to contain child pornography: 1a4ts24f44dcgswk7825189_1136284323422362_1912523643846393856_n.jpg. This image can be described as white female child, between eight and ten years of age, nude from the waist down with legs spread and the focus of the image is the vaginal area. The child is wearing a tiger striped top and what appears to be a tail is visible under the exposed buttocks of the child.

19.    Facebook reported the following file appearing to contain child pornography: 8v41uju606kogsss78857098_570109200440770_4565273227437277184_n.jpg. This image can be described as a nude white female child, between 10 and 12 years of age, with her right hand touching her vaginal area in an act of what appears to be masturbation.

20.    Facebook reported the following file appearing to contain child pornography in an image file. Facebook indicated that "ASHLEY SMITH" sent the following file to "CORYBANKS":    7kpdewpu2xgc08kw79712074_684735941932415_1462357663307268096_n.jpg is an image file that shows a nude white female child between 8 and 10 years of age with her legs spread and an adult male, nude from the waist down, with an erect penis approaching the vagina of the child.

21.    *Cyber-Tip 60285062:* On November 29, 2019, Google, Inc. reported to the National Center for Missing and Exploited Children that a user on their system had engaged in the possession or manufacture or distribution of Child Pornography. Google

stated that a total of five files that contained apparent child pornography that was stored in the Google Gmail infrastructure. Google reported user corybanks74@gmail.com as the subject who was storing apparent contraband material, namely child pornography in the Gmail infrastructure.

22.     Google, Inc. further reported that phone number 1-217-358-2678 was associated with the account corybanks74@gmail.com. A check of this phone number shows that it has been reported to the Decatur Police Department by a registered child sex offender. The identified subject is TYLER D. JEFFREY (hereinafter "JEFFREY"), a white male born in September 1992, with a last known residence of 2168 East Roosevelt Ave., Decatur, Illinois.

23.     Google reported that the files were not visually reviewed when making this particular Cyber-Tip report.

### ADMINISTRATIVE SUBPOENAS TO AT&T

24.     All of these Cyber-Tips resolve to IPv6[1] addresses and an IPV4 address belonging to AT&T U-verse. On January 14, 2020, I asked Resident Agent in Charge Michael Mitchell to serve a Federal Administrative Subpoena upon AT&T to determine who was using the IPv6 and IPV4 address on the dates and times of the Cyber-Tips.

---

[1] An Internet Protocol Version 6 address (IPv6 address) is a numerical label that is used to identify a network interface of a computer or a network node participating in an IPv6 computer network. An IPv6 address is represented as eight groups of four hexadecimal digits, each group, or octet, representing 16 bits separated by colons (:). An example of an IPv6 address is: *2001:0db8:85a3:0000:0000:8a2e:0370:7334*

25.    The following AT&T U-Verse IP addresses were used and identified in the various Cyber-Tips:

a.  On September 15, 2019, at 00:16:15 UTC, a login to the Gmail Account corybanks74@gmail.com occurred from 108.199.244.213;

b.  On October 15, 2019, a login to Gmail account corybanks74@gmail.com occurred from 2600:1702:42e0:86b0:998f:e815:71ce:6746 (both of these IP addresses were turned over as part of Cyber-Tip 60285062 from Google, Inc. reporting that corybanks74@gmail.com was using the Gmail system to send and store suspected child pornography);

c.  On October 23, 2019, there was another Google login to IP address 2600:1702:42e0:86b0:f50d:e702:ef22:c843, again this IP accessed corybanks74@gmail.com;

d.  Google reported further that another Login occurred from corybanks74@gmail.com on November 17, 2019 from the following IP address: 2600:1702:42e0:86b0:e8d5:1520:6945:c8c3.

26.    On November 22, 2019, Facebook reported that user "ASHLEY SMITH" logged into the Facebook system using IP address 2600:1702:42e0:86b0:4d38: 3372:2773:bfe7, and on December 6, 2019, Facebook reported that user "CORY BANKS" had accessed the Facebook system from the following IP address 2600:1702:42e0: 86b0:ec7d:bdbb:5855:132c.

27.    On January 16, 2020, AT&T replied and identified the subscriber assigned to these IPv6 and IPV4 addresses, as an adult male, JIM JEFFERY (the deceased Father of TYLER D. JEFFREY), with a service address of 2168 East Roosevelt Ave., Decatur, Illinois

62521, which is TYLER D. JEFFREY's residence.  AT&T further confirmed that they are able to verify that this Internet service was assigned to the same subscriber on East Roosevelt Avenue since September 4, 2019, through the date of the subpoena. Therefore, the subject Facebook accounts requested in this warrant used IP Addresses that resolved to the JEFFERY residence.

### KNOCK AND TALK INTERVIEW WITH JEFFREY

28.     On March 11, 2020, I, along with TFO Todd Koester and Detective Charles Hendricks, went to JEFFREY'S residence located at 2168 East Roosevelt Ave., Decatur, Illinois. Detective Hendricks assists in the management of sex offender registration and advised to me that JEFFREY was planning to move from the State of Illinois to the State of Iowa.

29.     JEFFREY was encountered on the front porch of his residence at 2168 East Roosevelt Ave. I identified myself and TFO Koester.  JEFFREY acknowledged knowing Detective Hendricks. I advised to JEFFREY why we were there and asked if he would answer questions and consent to the search of his mobile device.

30.     JEFFREY consented to the search of the mobile device currently in his possession. JEFFREY was asked about the age of the device and how often he uses it. JEFFERY advised that this was a fairly new device and he was no longer in possession of his previous device. JEFFERY advised that the number to the device is 1-217-358-2678. JEFFREY signed the consent form and provided a passcode to TFO Koester.

31.     I asked JEFFREY about the accounts referred to in the various Cyber-Tips turned over to Decatur Police Department. JEFFREY first denied knowledge of the various identities and stated that several other individuals use his device. JEFFREY was asked about the corybanks74@gmail.com email address. JEFFREY stated that he has a cousin who resides in Peoria Illinois area, and has used his device in the past. JEFFREY was advised that his cousin used his device while he was in the Peoria area.

32.     I asked JEFFREY about the "ASHLEY SMITH" identity. JEFFREY advised that identity just "popped up" on his device. I then asked JEFFREY who else used his device. JEFFREY stated that all of his co-workers use his device when he is at work. TFO Borowczyk advised that the names of all of those individuals would be needed so follow up could occur.

33.     It appeared to me that JEFFREY was nervous speaking in front of his mother. JEFFREY was asked if he would speak in a more private setting. JEFFREY stated that he would. JEFFREY admitted that he had not been completely honest with me and admitted that he had a "problem".

34.     JEFFREY voluntarily came to the Decatur Police Department. After being properly advised, JEFFREY acknowledged that he understood his rights and agreed to answer questions and make statements.

35.     JEFFREY admitted that he set up the corybanks74@gmail.com account and that he had also set up the corresponding Facebook account as well. JEFFERY also

admitted to ownership and control of the Ashley Smith google and Facebook accounts as well. JEFFERY advised that he knew that as a registered sex offender he had to report these accounts but did not.

36.     JEFFREY advised that he has a "problem" and a "curiosity." JEFFREY advised that he viewed pornography when he saw a "pop-up" that showed younger people.  JEFFREY advised that he used the "Bing" search engine to search for material that he believed would show him nude minors.

37.     At first JEFFERY stated he just located images of nude children, but when confronted, JEFFREY admitted that he knew that some of the children were involved in sexual acts such as oral sex and penile-vaginal penetration. JEFFERY admitted that he was using the Facebook accounts to send himself the child pornography. JEFFERY further admitted that he used the corybanks74@gmail.com account to store child pornography. JEFFREY advised that there would be less than 50 image type files in this account.

38.     JEFFREY advised that there should not be any child pornography images on the device in his possession as it was newer, and he had not accessed any child pornography with the device. JEFFREY advised that the device he used he no longer owns, and he does not know where it would be.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

39.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and

other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

40.    Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on computer systems owned, maintained, controlled and/or operated by Facebook, Inc., there exists evidence of a crime, contraband, instrumentalities, and/or fruits of violations of criminal laws as specified herein.  Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Facebook accounts belonging to JEFFREY, described in Attachment A will contain evidence of a crime.   Accordingly, a search warrant is requested.

## JURISDICTION

41.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of

the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g),
the presence of a law enforcement officer is not required for the service or execution of
this warrant.

s/Ronald Borowczyk

RONALD A. BOROWCZYK
Task Force Officer
Homeland Security Investigations

Attested to by the affiant in accordance with the requirements of Fed. R. Crim.
P. 4.1 by electronic mail and telephone on March 27, 2020.

s/Eric Long

ERIC I. LONG
United States Magistrate Judge

20

## ATTACHMENT A

This warrant applies to information associated with the Facebook user

TYLER D. JEFFREY:

| Screen Name | Facebook User ID | Profile URL | IP address |
|---|---|---|---|
| Cory.banks.1481 | 100034034704947 | http://www.facebook.com/cory.banks.1481 | 2600:17802:42e0:86b0:ec7d:bdbb:5855:132c |
| Ashley-Smith | 100041645890133 | https://www.facebook.com/people/Ashley-Smith/100041645890133 | 2600:1702:42e0:86b0:4d38:3372:2773:bfe7 |

that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc.,

1601 S. California Avenue, Palo Alto, CA 94304.

1

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Facebook, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A from the dates of September 1, 2019, through the present:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

2

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 2251(a), 2252, 2252A, 2422(c) involving **TYLER JEFFREY** from the dates of September 1, 2019, to the present, including information pertaining to the following matters:

(a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Facebook account owner;

3

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

(d) The identity of the person(s) who communicated with the user ID about matters relating to the sexual exploitation of minors, trafficking child pornography, and/or the use of a facility of interstate commerce to entice minors to engage in unlawful activity, including records that help reveal the whereabouts and identities of these minors;

(e) Evidence of communication with others about travel to meet minors for sex acts;

(f) Evidence of sexually explicit images of minors;

(g) Evidence of grooming or soliciting others to engage in unlawful sexual activity or exploitation;

(h) Any and all images to assist with identification.

4

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC<br>RECORDS PURSUANT TO FEDERAL RULES OF<br>EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this certification is true and correct.  I am employed by **Facebook, Inc.**, and

my title is _____.  I am qualified to authenticate the records

attached hereto because I am familiar with how the records were created, managed,

stored, and retrieved.  I state that the records attached hereto are true duplicates of the

original records in the custody of **Facebook, Inc.**  The attached records consist of

_____

[generally describe records (pages/CDs/megabytes)].  I further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly

conducted business activity of **Facebook, Inc.,** and they were made by **Facebook, Inc.** as

a regular practice; and

b.      such records were generated by an electronic process or system of

**Facebook, Inc.** that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of **Facebook, Inc.** in a manner to ensure that they are true

duplicates of the original records; and

5

2.     the process or system is regularly verified by **Facebook, Inc.,** and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                                    Signature